## CHESLEY *v.* CHESLEY.

The burden of proof is upon the party who asserts the affirmative of a proposition or issue, and he has the right to open and close in a trial before the court or jury. If, however, the affirmative of any issue is upon the plaintiff, he has the right to open the case to the jury, and make the closing argument.

In determining which party is to begin and close, it is not so much the form of the issues which is to be regarded, as their substance and effect. If any thing is left for the plaintiff to show affirmatively, the right to commence and close is with him.

Chesley *v.* Chesley.

The report of trial commissioners need not be put in evidence by either party, or submitted to the jury by the court, unless controverted by the statements of the parties, and overthrown by the verdict, it must guide the court in the rendition of judgment, whether put in evidence or not.

Evidence of what a witness testified before trial commissioners may be introduced for the purpose of impeaching his testimony before the jury, although the report made by the commissioners, of the evidence given before them, contains no statement of such conflicting testimony.

Evidence of prior indebtedness is not competent to rebut proof of the contracting of new liabilities.

The report of trial commissioners, when put in evidence before the jury, is a proper subject of comment by counsel, in connection with the other testimony in the cause.

When a cause has been referred to trial commissioners, judgment is to be rendered agreeably to their report, unless the same is controlled and overthrown by a verdict rendered specifically upon the facts put in issue by the statements of the parties, filed in accordance with the provisions of the statute.

ASSUMPSIT, on a note dated February 4, 1851, for $3000, made by the defendant to the plaintiff, on demand, with interest, and for money had and received, $7000, and upon account annexed, $79.15.

The writ was dated November 10, 1853, and the plea, the general issue, with notice of a set-off. At August Term, 1856, the action, on the defendant's motion, was referred to two commissioners under the statute, (See Comp. Stat., ch. 181, sec. 29) who made report at August term, 1857, which report is made part of this case, and is annexed hereto, and marked A.

The defendant, electing to try the case by jury, filed a statement in writing of the particulars in which he expected to change the result of the report, which statement is made a part of this case, and annexed hereto, and marked B.

The defendant claimed the right to open and close in the trial of the special issues of fact before the jury, but the court ruled that the plaintiff was entitled to that advantage, to which ruling the defendant excepts.

Chesley *v.* Chesley.

The defendant, at the trial, insisted that the plaintiff should be compelled to introduce first in evidence the report of the commissioners, and should not be allowed to offer any other evidence. The court ruled that the plaintiff might introduce other evidence than said report, to prove the consideration of the notes in question, either be-. fore or after reading said report; whereupon the plaintiff called a witness, who testified to facts tending to show that said notes were given as the consideration to be paid for said farm, and rested his case. The defendant then moved for a nonsuit, because the plaintiff had not read said report in evidence, and for judgment.

The court overruled the defendant's motions, and suggested that if the report was not read to the jury by either party, the clerk would be directed to read it, and it would be regarded as *primâ facie* evidence of the facts stated therein; whereupon the plaintiff elected to read the report to the jury, and the trial proceeded. To this ruling of the court the defendant excepts.

The defendant called as a witness one Miles, who had also sworn before the commissioners as a witness. The commissioners, at the request of the defendant, had, in compliance with the provisions of section 31, reported to the court the evidence given before them, and with the rest that of said Miles.

The plaintiff, to contradict said Miles on the present trial, called witnesses to testify what said Miles had stated under examination before said commissioners. The defendant objected, that the testimony of said Miles, as reported by said commissioners, was the only competent evidence of what he then stated; but the court overruled the objection, and allowed said witnesses to testify, and the defendant excepts.

The defendant afterwards read the testimony of said Miles, as reported by the commissioners, to confirm his statement on this trial.

The defendant proposed to prove that he was largely indebted at the time of taking said deed, to show the improbability that he would purchase this farm in question; but the court ruled the evidence immaterial and incompetent, and to this ruling the defendant excepts.

The cause was argued by the counsel for each party more than three hours. During the closing argument for the plaintiff, the defendant's counsel objected to the course of argument upon the report. The court ruled that it was competent for the plaintiff's counsel to discuss the report of the commissioners, as bearing on the credibility of the defendant's witnesses, whose testimony the plaintiff's counsel argued must have been disregarded by the commissioners, because such witnesses testified before them, and their report is inconsistent with the testimony of the said witnesses, to which ruling the defendant excepts.

The court charged the jury that said notes imported a consideration, and of themselves afford *primâ facie* evidence of a consideration, and to this charge the defendant excepts.

The court submitted to the jury two questions, to wit:

"Were, or not, said notes given as the consideration to be paid by the defendant for said farm?"

"Did, or did not, the plaintiff, at the time said notes were given, agree with and promise the defendant, to give them both up to him without any payment, in a short time, to be cancelled?"

The jury answered the first question in the affirmative, and the last in the negative, and their verdict is recorded, as follows:

The jury find that said notes were given as the consideration to be paid by the defendant for said farm, and that the plaintiff did not, at the time said notes were given, agree with and promise the defendant to give them both up to him without any payment, in a short time, to be cancelled.                    JOHN E. GOODWIN, Foreman.

Chesley v. Chesley.

The defendant moved that said verdict be set aside, and for a new trial, for the causes aforesaid.

The plaintiff claimed judgment for the amount of both notes and interest, deducting the amount of the defendant's account, as reported by the commissioners.

·A.

## Commissioners' Report.

### Rosamond Chesley, Plf., v. Daniel Chesley.

The undersigned, commissioners in the above action, having been first duly sworn, appointed the New-Hampshire Hotel, in Dover, and the 16th day of October, 1856, at ten o'clock A. M., as the time and place of hearing, and gave both parties due notice thereof; and having then and there fully heard both of the parties, make report of the following facts, as proved before us :

On the fourth day of February, A. D. 1851, the plaintiff conveyed to the defendant her farm, situated in Madbury and Durham. No money was paid at the time the deed of conveyance was executed and delivered, but the defendant gave the plaintiff two promissory notes, for the sum of three thousand dollars each, as the consideration of said conveyance.

Within one year after these notes were thus given, the plaintiff voluntarily and without any consideration gave up one of these notes to the defendant, to make him satisfied, as she expressed it, and the note thus given up was destroyed by the defendant. The other note, for three thousand dollars, with the interest thereon, still remains wholly unpaid, and is now due to the plaintiff, except so far as the same may be reduced by the facts hereafter stated. Some time during the year 1851 the plaintiff lent the defendant twenty-five dollars, to pay for a cow he had bought, but the defendant subsequently repaid her the money thus lent.

On the first of April, 1851, the defendant moved his family into the house on the farm he had purchased of the plaintiff, and continued to live in that house until July, 1853, when the house was destroyed by fire. The plaintiff also continued to live in the same house, and occupied the westerly end, consisting of two lower rooms and two

chambers. These rooms were furnished with her own furniture. For about one year after April 1, 1851, the plaintiff boarded in the defendant's family, and took her meals a part of the time in the defendant's family, and part of the time in her own rooms. During the remainder of the time to July, 1853, the plaintiff still occupied the same four rooms in the defendant's house, and a part of the time took her meals with the defendant's family, and a part of the time in her own room. A part of the time she cooked her own food. The food thus cooked by her was furnished partly by the defendant. The plaintiff, with her own money, at different times purchased supplies for her use, such as tea, sugar, rice, fish, flour and meat, once or more, and some other small articles, which were consumed in her family. Her washing and ironing was principally done by the defendant's family, but she sometimes hired other persons to do this. During the winter the plaintiff kept two fires, one in a stove and the other in a fire-place, and the defendant furnished all the wood she burnt while she lived in his house, and usually made her fire for her. At different times during this period the plaintiff was unwell, and had nurses and other persons in her service, and these were also provided with food the same as the plaintiff was. Some of these persons at different times washed, and ironed, and cooked, for plaintiff. One Daniel C. Demeritt, a relative of the plaintiff, made her two visits and was boarded by the defendant. The first time he remained three weeks and one day, and the last time ten weeks. The plaintiff delivered half a bushel of rye and one bushel of corn, belonging to the defendant, to a person who had been at work for the plaintiff, in part pay for her services. A Mrs. Brown, while nursing the plaintiff, was taken sick at the defendant's house, and the defendant's family took care of her for a week. Four men employed in working out the plaintiff's highway tax were boarded by the defendant. Before moving on to the farm, in April, 1851, the defendant let the plaintiff have four pounds of butter. The defendant, at the request of the plaintiff, carried Mrs. Brown to Dover; also went to Dover after her; went for her once to Newmarket, once to Lee, once to Rochester, once to Portsmouth, and several other times to Dover, all on the plaintiff's business. One John Speed, who had formerly lived with the plaintiff, made it

Chesley *v.* Chesley.

his home at the house occupied by the plaintiff a part of the time, but the defendant had invited Speed to make his house his home in welcome, and told him it should cost him nothing. The following sums are due from the plaintiff to the defendant, and are to be deducted from the amount of the note for three thousand dollars, with interest, as of July, 1853.

ROSAMOND CHESLEY to DANIEL CHESLEY, DR.

| | | |
|---|---|---:|
| 1851. | For boarding D. C. Demeritt from July 4, to July 26, being three weeks and one day, at 7s. 6d., | 3.93 |
| | For boarding D. C. Demeritt from October 27, 1851, to January 5, 1852, ten weeks, at 7s. 6d. | 12.50 |
| | For ½ bushel rye, | .50 |
| | For 1 bushel corn, | 1.00 |
| | For taking care of your nurse, Mrs. Brown, while sick, | 1.50 |
| | For carrying Mrs. Brown to Dover, | 1.00 |
| | For going to Newmarket for nurse, | 1.00 |
| | For going to Rochester for you, | 2.00 |
| | For going to Portsmouth for you, | 2.00 |
| | For going to Pendergast's, in Lee, for nurse, | .50 |
| | For boarding four men working out your tax, | 1.50 |
| | For going to Dover for you twice, | 2.00 |
| | For four pounds of butter, | .80 |
| 1852. | For boarding you one year at $3 per week, including use of four rooms, | 150.00 |
| Apr. 1. | For provisions furnished you from April 1, 1852, to July 12, 1853, and washing and ironing, | 150.00 |
| | For rent of house from April 1, 1852, to July 12, 1853, | 27.50 |
| | For furnishing wood, sawing, splitting, and carrying in the same, and building your fires during the same period, | 30.00 |

Amounting to three hundred eighty-seven, 73-100 dollars, $387.73

And the commissioners, upon the request of the defendant, herewith report the evidence given before them on said hearing.

THOMAS E. SAWYER, } *Commissioners.*
NATH. WELLS, }

## B.

*Statement of Particulars in which Deft. expects to alter Report of Commissioners.*

STRAFFORD SS.—COURT OF COMMON PLEAS, AUGUST TERM, 1857.

*Rosamond Chesley* v. *Daniel Chesley.*

Upon examination of the report of the commissioners,

as made to the court here, at this term, the defendant elects to try the case before the jury, and furnishes the following statement of the particulars in which he expects to change the result of the report, viz. :

He says, and expects to show, that said notes, or either of them, were not given for, or as the consideration of the conveyance from the plaintiff to the defendant of her farm, as in said report is found, but that they were given without any good or legal consideration whatever, under the circumstances and for the purposes specified in the defendant's statement of the facts that constitute his case, which was read and used before the commissioners.

That the plaintiff, at the time said notes were given, agreed with and promised the defendant to give them both up to him, without any payment, in a short time, to be cancelled, and that there is nothing due to the plaintiff on either of said notes, nor was at the time of the commencement of this action.

By his attorneys,

CHRISTIE & KINGMAN.

*S. M. Wheeler*, for the plaintiff.

*Christie & Kingman*, for the defendant.

FOWLER, J. The first exception is to the ruling of the court below, that, in the condition of the pleadings, the plaintiff was entitled to open and close the case before the jury ; and we think it cannot prevail.

Repeated adjudications recognize the general rule as well established in this State, that the burden of proof is upon the party who asserts the affirmative of an issue or proposition, and that he has the right to open and close in a trial before the court or jury. The same adjudications, however, recognize this modification of the general rule, that if the affirmative of any issue joined upon the pleadings is upon the plaintiff, he has the right to open the case to the jury, and make the closing argument. *Belknap v. Wendell*, 21 N. H., (1 Foster) 175 ; *Seavey v. Dearborn*, 19 N. H. 351 ; *Thurston v. Kennett*, 22 N. H. (2 Foster) 151 ;

Chesley *v.* Chesley.

*Buzzell* v. *Snell*, 25 N. H. (5 Foster) 478 ; 1 Greenl. Ev., sec. 74 ; Howe's Practice 251.

The same authorities also determine that, in considering which party is entitled to begin and close, it is not so much the form of the issues which is to be regarded, as the substance and effect of them—that the judge will consider what is the substantial fact to be made out on the trial, and on whom it lies to make it out, and if any thing is left for the plaintiff to show affirmatively, the right to commence and close is with him. *Bills* v. *Vose*, 27 N. H. (7 Foster) 215 ; *Thurston* v. *Kennett*, 22 N. H. (2 Foster) 151.

Applying the doctrines of these decisions to the pleadings before us, and the defendant's statement under the statute must be regarded as his plea, there can be no doubt that the court properly ruled that the plaintiff was entitled to the advantage of opening and closing the case before the jury. The plaintiff claimed to recover the amount of the defendant's two promissory notes for $3000 each, alleging that they were given as the consideration for a farm which the plaintiff, at their date, conveyed to the defendant. The commissioners found both notes to have been thus given, and one of them still due. The defendant, by the first clause of his statement, and the latter portion of the second clause, denied the plaintiff's allegations as to both notes, asserting that neither of them was given as the consideration for the farm, but without any good or legal consideration whatever, and that nothing was due the plaintiff upon either of them when the action was commenced. This was in substance a denial of the plaintiff's allegations in respect to both notes, and amounted, in effect—the statute requiring the verdict to be specifically on the facts put in issue by the statement—to nothing more nor less than the general issue ; and the practice has always been for the plaintiff's counsel to open and close, where the general issue is pleaded, whatever the nature of the controversy. *Tappan* v. *Jenness*, 21 N. H. (1 Foster) 232 ; *Ayer* v. *Austin*, 6 Pick. 225.

Upon these portions of the defendant's statement, at least, the affirmative was upon the plaintiff to sustain the validity of the notes, by showing that they were given, as alleged, in consideration for the conveyance of the farm; and it was, therefore, on the authorities, wholly immaterial to the question of precedence, that, in the first part of the second clause of his statement, the defendant alleged an agreement by the plaintiff to surrender the notes up to him, to be cancelled, the burden of proving which must fall upon the defendant.

The second exception relates to the ruling of the court below, denying the defendant's motion for a nonsuit, because the plaintiff rested his case before reading in evidence the report of the commissioners, and to the suggestion of the court, that if their report were not read to the jury by either party, the clerk would be directed to read it as *primâ facie* evidence of the facts stated therein. As the plaintiff subsequently read the report in evidence, the consideration of this exception is of little importance, except as determining the rule of practice in trials upon commissioners' reports.

The defendant's motion would seem to have rested on the provisions of the statute in relation to trials to change the result of an auditor's report, where it is said that the " report shall be given in evidence to the jury, subject to be impeached by evidence offered by either party." Revised Statutes, chap. 189, sec. 5 ; Comp. Laws, 490. But the act relating to commissioners contains no similar provision. It provides simply, that " at the trial the report shall be *primâ facie* evidence of the facts" stated in it, but does not require it to be given in evidence to the jury. Where, as in the case before us, neither party was satisfied with the finding of the commissioners, we can perceive no good reason why either should be compelled to offer it in evidence, or why the court should be bound to have it read to the jury. In the absence of any statute provision on the subject, we do not see why the commissioners' report,

so far as relates to the use of it by the parties, does not stand like any other independent piece of evidence, to be used by either party that may desire to lay it before the jury, or not to be used by either, at their election. Being made by the statute *primâ facie* evidence of the facts stated in it, if either party chooses to offer it, it stands until impeached and overthrown by one side or the other. If both parties are dissatisfied with its findings, as the statute does not expressly require it, we can discover no good reason why either must necessarily use it, or the court cause it to be read in evidence to the jury, thereby subjecting both parties to the task of impeaching its conclusions before them. In the case of auditors, the legislature have provided that their report shall be given in evidence to the jury, while it is only provided that the reports of commissioners shall be *primâ facie* evidence of the facts found by them. Unless controverted by the statements of the parties, and overthrown by the verdict of the jury specifically upon those statements, the commissioners' report is to guide the court in the rendition of judgment, equally whether put in evidence before the jury or not.

In our opinion, therefore, the ruling of the court below denying the motion for a nonsuit and judgment, was correct, while their suggestion, that, if neither party offers the report of the commissioners in evidence, the clerk would be directed to read it to the jury, was erroneous. As the effect of this erroneous suggestion, however, was to induce the plaintiff to read the report to the jury, thus imposing upon himself the burden of impeaching its conclusions, so far as they conflicted with his evidence, it is evident the defendant cannot have suffered thereby, and there is no cause for disturbing the verdict on that account.

The third exception is to the ruling of the court permitting the plaintiff to introduce evidence, outside of the commissioners' report of his testimony, as to the statement of Miles when testifying as a witness before the commissioners.

It is well settled in this State, that evidence showing that a witness has made statements substantially different from and inconsistent with his testimony given upon a trial, in regard to material matters, is admissible to affect his credit; and this, whether the witness has or has not been previously inquired of as to whether or not he ever made such statements. *Martin* v. *Farnum*, 25 N. H. (5 Foster) 195; *Titus* v. *Ash*, 24 N. H. (4 Foster) 319; *Wiggin* v. *Plumer*, 31 N. H. (11 Foster) 251; *Flanders* v. *Davis*, 19 N. H. 139.

If a witness' statements, when not under oath, are competent to contradict or impeach his testimony on the trial, much more is his testimony, on a former hearing, available for the same purpose.

But the objection taken seems to have been, that the testimony of Miles, as reported by the commissioners, was the only competent evidence of what he stated on the hearing before them. This could hardly be so. The commissioners would undoubtedly design to write down and report the substance of what the witness testified before them, which they deemed material. But their report of the evidence, like the minutes of counsel, must necessarily be liable to errors and omissions. The fact that their report of the testimony did not contain the material statements attempted to be proved *aliunde*, would impose upon the plaintiff the burden of establishing their existence by clear and preponderating proof. The presumption, perhaps, was that the commissioners reported every thing material, and the defendant had the right, of which he availed himself, to introduce the testimony of the witness, as reported by the commissioners, to weigh against the plaintiff's evidence *aliunde*. But it was competent for the plaintiff to rebut, by positive testimony to the contrary, any presumption arising from the commissioners' report of the witness' testimony before them, and to contradict him by showing that, when testifying before

them, he made material statements, inconsistent with his testimony before the jury, although the commissioners had failed to report those statements.

The evidence to show the previous indebtedness of the defendant at the date of the conveyance of the farm to him by the plaintiff, was properly rejected. There is no presumption of law or of fact, that a person largely in debt will not contract new and further liabilities; indeed, all experience proves that the hope of being able thereby in some way to extricate themselves from prior indebtedness is one of the most frequent, as well as most powerful inducements to the incurring of additional liabilities by debtors.

The report of the commissioners, having been put in evidence by the plaintiff, and being made by the statute *primâ facie* evidence of the facts found by it, if its findings were inconsistent with the testimony of witnesses before them, showed conclusively that they must either have disregarded the testimony of those witnesses, or that it must, in their judgment, have been overbalanced and overborne by conflicting evidence before them. In either event, the findings of the report were proper subjects of comment, in connection with the weight to be attached to the testimony of those witnesses before the jury. If there were, as seems probable, no conflicting testimony before the commissioners, the report of the commissioners was conclusive that they discredited them. If there were conflicting testimony, the report was equally conclusive that the commissioners regarded it as overbalancing and overthrowing that of these witnesses. At all events, the report, if it conflicted with the testimony of these witnesses before the jury, was entitled to be received and weighed by the jury as *primâ facie* establishing the contrary positions. In any view, it was competent for the plaintiff's counsel to comment upon and argue all the testimony in the case, and, if any portion of it conflicted with another, to insist that the

existence of the former detracted somewhat from the weight and credit to be given to the latter.

That, as between the parties, a promissory note imports a consideration, and that this presumption is to stand until the contrary is shown, is too clear to admit of argument. *Coburn* v. *Odell,* 30 N. H. (10 Foster) 552; *Horn* v. *Fuller,* 6 N. H. 511; *Adams* v. *Hackett,* 27 N. H. (7 Foster) 293; 2 Starkie's Ev. 280; *Goshen Turnpike Company* v. *Hurtin,* 9 Johnson 217.

The verdict in this case, being specifically on the facts put in issue by the statement of the defendant, agreeably to the provisions of the statute, (Comp. Laws 438, sec. 35) and completely negativing that statement, while it in no way conflicts with the findings of the commissioners, the plaintiff is entitled to judgment on the report, notwithstanding the verdict for the amount of the $3000 note found due by the commissioners, after deducting therefrom the amount of the defendant's account, as allowed by them, in offset. But he cannot have judgment for the amount of both notes, less the offset, because the commissioners have found that one of them was voluntarily given up by the plaintiff to the defendant to satisfy him, and the verdict does not conflict with the finding. It is true, the jury have found that the two notes were originally given for the farm, and so did the commissioners. But the commissioners further found that one of them was voluntarily surrendered and given up to the defendant by the plaintiff, and destroyed, and there is nothing in the verdict to overthrow this conclusion. The commissioners' report, therefore, stands, and, under the statute, the court are bound to regard its findings as correct, unless overthrown by the verdict. The plaintiff filed no statement controverting the finding of the commissioners as to the voluntary surrender of one of the notes, as she might and should have done, had she desired to overthrow it. No issue was submitted to the jury on that finding, as there would have

been if the plaintiff, by her statement, had controverted it. It therefore stands uncontradicted, and, consequently, the plaintiff can only have judgment for the amount of one note, less the offset.

> *Judgment for the plaintiff on the report.*